IN THE UNITED STATES DISTRICT COURT

FOR THE WESTERN DISTRICT OF WISCONSIN
_____

ROMAN CATHOLIC FOUNDATION, UW-MADISON INC.,
ELIZABETH A. PLANTON and ELIZATHER A. CZARNECKI,

          Plaintiffs,                  ORDER
                                            07-cv-505-jcs
   v.

DAVID WALSH, MARK J. BRADLEY, JEFFREY
BARTELL, ELIZABETH BURMASTER, EILEEN
CONNOLLY-KEESLER, JUDITH V. CRAIN, MARY
QUINNETTE CUENE, DANAE DAVIS, MICHAL J.
FALBO, THOMAS LOFTUS, MILTON MCPIKE,
CHARLES PRUITT, PEGGY ROSENZWEIG, JESUS
SALAS, BRENT SMITH, MICHEL J. SPECTOR, KEVIN
P. REILLY, JOHN D. WILEY, LORI M. BERQUAM,
ELTON J. CRIM, JR. and YVONNE FANGMEYER,

          Defendants.
_____

    Plaintiffs' motions for preliminary injunctions came on to be heard before the Court in the above entitled matter on January 17, 2008, the plaintiff having appeared by Alliance Defense Fund by David J. Hacker, Travis C. Barham and Jordan Lawrence; defendant by by J.B. Van Hollen, Attorney General, by Bruce A. Olson, Assistant Attorney General.  Honorable John C. Shabaz, District Judge, presided.

    The Roman Catholic Foundation, UW-Madison, Inc. ("RCF")is a non-profit corporation, and not a church, that came into legal existence on May 1, 2007. RCF was formerly known as the University of Wisconsin-Madison Roman Catholic Foundation, Inc. ("UWRCF"). RCF was created to promote the religious, charitable and education interests of Roman Catholic and non-Roman Catholic students,

faculty and staff at UW-Madison. Individual plaintiffs are UW-Madison students and members of RCF.

The University of Wisconsin System ("UW System") is a public university in the State of Wisconsin. The UW System Regents ("Regents") issue polices and procedures that each branch in the UW System, including UW-Madison, must adopt.

Most students pay tuition and a student activity fee every semester they attend UW-Madison. The student activity fee is called a Segregated University Fee ("SUF").

UW-Madison invites students to form student organizations and engage in expressive activities on campus. According to the Student Organization Office handbook, registered student organizations ("RSO") receive many benefits from UW-Madison that non-registered student organizations do not. One such benefit is that RSOs are eligible to apply for grants from the student government, i.e., Associated Students of Madison ("ASM").

The Student Services Finance Committee ("SSFC") of the ASM allocates General Student Services Fund ("GSSF")grants. GSSF grants are funded with monies from SUF.

To apply for GSSF funding an RSO must file a GSSF Eligibility Application. If the SSFC approves the application then the RSO is eligible to submit a proposed GSSF budget for SSFC consideration and recommendation. Once an RSO's budget is approved by ASM it still must go to the UW-Madison chancellor who decides whether to recommend to the Regents that the budget be included in the UW-Madison budget and then the budget is sent to the Regents for final

approval. When an RSO's GSSF budget is approved the RSO does not receive the budget monies in advance. Instead the funding is distributed on a reimbursement basis by submitting receipts and invoices for activities listed in the budget. GSSF funding applications are reviewed a year in advance, which means that applications for the 2008-09 academic year were reviewed in the fall of 2007.

In the fall of 2005, UWRCF applied for GSSF funding for the 2006-07 academic year. The budget was eventually approved in the summer of 2006 when the Regents approved ASM's SUF allocation, which included UWRCF's 2006-07 GSSF budget.

Although UWRCF's 2006-07 GSSF budget had been approved the year before, in the fall of 2006 UWRCF was not permitted to apply for GSSF funding because it was not recognized as an RSO for having failed to satisfy two required criteria. UWRCF filed suit in federal court alleging various constitutional violations against defendants. On May 2, 2007 the parties agreed to a release and settlement agreement. As part of the agreement, UWRCF's revision of its Articles of Incorporation and Bylaws led to it being replaced by RCF in regards to the 2007-08 GSSF budget. RCF was to be considered an RSO in regards to the 2007-08 budget and RCF's proposed GSSF budget of $253,273.88 was to be approved subject to review for the legality of the proposed expenditures.

Between execution of the May 2, 2007 agreement and August 13, 2007 the parties had several meetings to discuss which of RCF's

activities the UW-System would and would not reimburse. On August 13, 2007 defendants explained that several outstanding requests for reimbursements under the 2006-07 budget as well as several upcoming expenses under the 2007-08 budget could not be funded through the SUF. Defendants cited potential violation of the Establishment Clause as why those activities could not be funded. Defendants explained that it would not reimburse funds used for religious speech that is worship, religious proselytizing speech and religious speech that aims to inculcate belief in a particular religious faith.

In the fall of 2007 RCF filed its GSSF Eligibility Application for the 2008-09 academic year but was denied eligibility because the SSFC determined that RCF failed to satisfy the "significant additional components" standard.

Plaintiffs filed two separate motions for preliminary injunction. The first P/I motion requests two things:

> (1) that the Court enjoin defendants from applying a policy or practice of denying plaintiffs reimbursement for speech or expression considered prayer, worship and/or proselytizing;
> (2) that the Court require defendants to fund plaintiffs' 2007-08 GSSF budget and fund plaintiffs' outstanding 2006-07 GSSF budget requests.

The second P/I motion also requests two thing:

> (1) Same as 1st request in the first P/I motion *supra*;
> (2) that the Court enjoin defendants from requiring that plaintiffs satisfy the "significant additional

4

           components" standard when applying for GSSF eligibility.

With both motions for P/I plaintiffs request waiver of any bond requirements. Each motion will be addressed separately.

**MERITS OF THE 1st P/I Motion**:

    A. **<u>Likelihood of Success</u>**

Determining the likelihood of success consists of two issues: (1) whether defendants' have engaged in viewpoint discrimination by refusing to provide segregated university fees to fund religious speech considered to be prayer, worship and/or proselytizing; (2) assuming there is viewpoint discrimination, is such discrimination necessary for defendants to avoid violating the Establishment Clause.

1. Merits of Constitutional challenge to whether defendants' refusal to fund religious speech considered to be prayer, worship and/or proselytizing is impermissible viewpoint discrimination:

   (a) The state may not exercise viewpoint discrimination, even when it has created its own limited public forum. <u>Rosenberger v. Rector & Visitors of Univ. of Va.</u>, 515 U.S. 819, 829, 115 S. Ct. 2510, 132 L. Ed. 2d 700 (1995).

   (b) A university's mandatory fee system creates a metaphysical forum of money that can be considered a limited public forum if the principles of viewpoint neutrality are respected. <u>Bd. of Regents of the Univ. of Wis. Sys. v. Southworth</u>, 529 U.S. 217, 234, 120 S. Ct. 1346, 146 L. Ed. 2d 193 (2000) (<u>Southworth I</u>); <u>Rosenberger</u>, 515 U.S. at 830; <u>Southworth v. Bd. of</u>

5

       Regents of the Univ. of Wis. Sys., 307 F.3d 566, 580 (7th Cir. 2002)(Southworth II).

       (i) In Rosenberger the Supreme Court held that a university's refusal to fund a student publication because the publication addressed issues from a religious perspective violated the Free Speech Clause.

(c) The current action is undistinguishable from Rosenberger. As in Rosenberger, this case involves the metaphysical forum of money (i.e., segregated student fees) created by a university. Also, like the university in Rosenberger, here defendants are refusing to reimburse plaintiffs for certain activities of religious expression and/or speech based solely on the religious nature of the speech. For example, defendants have stated that they will not fund plaintiffs' Samuel Groups because of the prayer and worship involved.

Accordingly, similarly to the university in Rosenberger defendants have engaged in viewpoint discrimination in violation of plaintiffs' First Amendment free speech rights and plaintiffs have shown a reasonable likelihood of success on the merits of their First Amendment free speech claim.

2. Merits of defendants' defense that funding religious speech considered prayer, worship and/or proselytizing would violate the Establishment Clause:

(a) Governmental programs can avoid violating the Establishment Clause when the programs use neutral criteria and evenhanded policies, even if benefits are extended to ideologies and viewpoints that are religious. Rosenberger, at 839. In Rosenberger, the governmental program used by the university was neutral toward religion because its purpose was not to advance religion but to open a forum for speech and to support various student enterprises in recognition of the diversity and creativity of student life. Id. at 840.

6

      (i)    In the current action, the funds that RCF would be receiving through reimbursement are open and available to a diverse list of other groups. The metaphysical forum of segregated student fees created by defendants was meant to open a forum to all types of student organizations, clearly not just religious student organizations, and therefore the policy of providing such monies is neutral toward religion.

(b)    Furthermore, in <u>Rosenberger</u>, "[t]he viewpoint discrimination inherent in the University's regulation required public officials to scan and interpret student publications to discern their underlying philosophic assumptions respecting religious theory and belief. That course of action was a denial of the right of free speech and would risk fostering a pervasive bias or hostility to religion, which could undermine the very neutrality the Establishment Clause requires." <u>Id.</u> at 845-46.

      (i)    Similar to the university in <u>Rosenberger</u>, in this case defendants' practice of examining and interpreting plaintiffs' activities to determine if they are prayer, worship and/or proselytizing runs the risk of fostering a pervasive bias or hostility toward religion, which could undermine the very neutrality the Establishment Clause requires.

(c)    Moreover, according to the reasoning in <u>Southworth I</u>, in a university setting, mandatory segregated student fees paid to the university and provided to student groups is not speech of the university or its agents. <u>Southworth I</u>, 529 U.S. at 234-35. Also, "[S]ubsidized student organizations at public universities are engaged in private speech, not spreading state-endorsed messages. . . . It would be a leap . . . to suggest that student organizations are mouthpieces for the university." <u>Christian Legal Soc'y v. Walker</u>, 453 F.3d 853, 861 (7th Cir. 2006).

      (i)    Here, RCF, as a subsidized student organization engaged in private speech at a public university, would not be assumed to be a mouthpiece for the university. Also, providing monies from mandatory segregated student fees to student groups, even religious student groups, does not make the groups' speech the university's speech, i.e. government speech.

Accordingly, defendants' funding of plaintiffs' religious expression in the form of prayer, worship and/or proselytizing through segregated student fees would not violate the Establishment Clause and plaintiffs have shown a reasonable likelihood of success on their First Amendment claim defeating defendants' Establishment Clause defense.

B. **Irreparable Harm**

"The loss of First Amendment freedoms is presumed to constitute an irreparable injury for which money damages are not adequate." Christian Legal Soc'y, 453 F.3d at 859. Plaintiffs' likelihood of success on their First Amendment free speech claim creates an irreparable harm as it relates to future loss of First Amendment freedoms.

However, plaintiffs' second request, which is for money to pay for past expression that was engaged in but not reimbursed, does not create an irreparable harm. If plaintiffs do prevail money damages would be adequate to remedy defendants' failure to reimburse plaintiffs for those costs.

C. **Balance of Harms**

The only harm defendants raised was that funding plaintiffs' religious speech would violate the Establishment Clause. This harm has been dealt with as it is reasonably likely that such funding does not violate the Establishment Clause. Accordingly, there is no harm to balance against plaintiffs' irreparable harm of a loss of First Amendment freedoms.

D.  **Public Interest**

"[I]njunctions protecting First Amendment freedoms are *always* in the public interest." Christian Legal Soc'y, 453 F.3d at 859 (emphasis added). Accordingly, an injunction protecting plaintiffs' First Amendment freedom would be in the public interest.

**MERITS OF THE 2nd P/I Motion:**

A.  Likelihood of success

Plaintiffs' second motion for preliminary injunction has two requests. The first request was the same as the first request in its first motion for preliminary injunction and accordingly the Court need not go through the same analysis.

In plaintiffs' second request addressing the likelihood of success consists of one core issue: (1) whether a vague standard used in the process of allocating mandatory segregated student fees vests the student government with unbridled discretion.

1.  Merits of whether a vague standard vests the student government with unbridled discretion:

    (a) The principal authority for addressing this issue is found in Southworth v. Board of Regents of the University of Wisconsin System, 307 F.3d 566 (7th Cir. 2002) (hereinafter Southworth II).

    (b) Plaintiffs in Southworth II argued that the student government had unbridled discretion "because some of the criteria are subjective and thus subject to manipulation." Id. at 590.

9

(c) However, the Seventh Circuit disagreed and explained that "it is always possible that the student government, or select student representatives, could ignore the Funding Standards and manipulate the eligibility and funding criteria to mask their viewpoint discrimination. But this possibility exists in almost every licensing or permit case. . . . [W]hile the Funding Standards provide some flexibility, the possibility of viewpoint discrimination is greatly reduced by the many other factors, procedural safeguards and appeals process." Id. at 590. The Seventh Circuit further explained that "[w]hile the Funding Standards grant a certain amount of discretion, that discretion is no greater than necessary to allow the student government to evaluate the funding requests." The court went on to conclude that the "funding Standards sufficiently bridled the SSFC and ASM finance Committee's discretion to satisfy the First Amendment's mandate of viewpoint neutrality and the prohibition on granting decision makers unbridled discretion." Id. at 592.

    (i) Here, the "significant additional components" standard, even if vague as opposed to being subjective, merely provides the student government with an amount of flexibility and discretion that appears "no greater than necessary to allow the student government to evaluate the funding requests." Id. at 592. Also, the other procedural safeguards (e.g., the appeals process and recorded hearings) support that the student government does not have unbridled discretion.

(c) Accordingly, it is not likely that plaintiffs' would be successful in proving that the "significant additional components" standard provides the student government with unbridled discretion.

(d) Plaintiffs' failure to prove a likelihood of success on the merits of their claim that the "significant additional components" standard provides the student government with unbridled discretion in violation of the First Amendments viewpoint neutrality requirement, requires denial of their requested preliminary injunction.

In conclusion, the facts presented in plaintiff's first motion for preliminary injunction suggest that plaintiff has a reasonable

likelihood of success of on its First Amendment free speech claim against defendants concerning defendants' practice and policy of denying reimbursement of plaintiff's religious speech considered prayer, worship and/or proselytizing.  This reasonable likelihood of success requires that plaintiff's first request in their first motion for preliminary injunction be granted.  However, plaintiff's request for money for outstanding reimbursements for past activities can be addressed by money damages at the end of the litigation and plaintiff's second request in their first motion for preliminary injunction will be denied.

Furthermore, Federal Rule of Civil Procedure 65(c) requires plaintiffs, as the party seeking the preliminary injunction, to give security for the payment of such costs and damages as may be incurred by defendants if it is found that defendants were wrongfully enjoined.  Based on the activities that defendants had indicated as non-reimbursable in plaintiffs' 2007-08 budget, the Court deems as proper security the sum of $20,000.00.  Plaintiffs may give security in the form of a bond in accordance with Federal Rule of Civil Procedure 65.1.

The facts presented in plaintiffs' second motion for preliminary injunction suggest that plaintiffs are unlikely to succeed on their claim that defendants' "significant additional components" standard provides the student government with unbridled discretion in violation of the First Amendment's requirement of viewpoint neutrality.  Accordingly, plaintiffs' second motion for preliminary injunction will be denied.

Roman Catholic Foundation, et al., v. David G. Walsh, et al.
Case No. 07-cv-505-jcs

ORDER

IT IS ORDERED that as to plaintiffs' first motion for preliminary injunction, defendants' are ENJOINED from enforcing any policy that prohibits or prevents plaintiffs from applying for or obtaining reimbursement for activities listed in plaintiffs' 2007-08 approved budget because the activities are or involve religious speech considered prayer, worship and/or proselytizing.

IT IS FURTHER ORDERED that plaintiffs' second motion for preliminary injunction is DENIED.

Entered this 17th day of January, 2008.

BY THE COURT:

/s/

_____
JOHN C. SHABAZ
District Judge